# IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 29794

| | |
|---|---|
| DARREN G. KUHN, an individual, SCHEI DEVELOPMENT CORPORATION, an Idaho corporation, ROGER J. SCHEI, an individual, and FRANCES R. SCHEI, an individual, | ) ) ) ) ) ) |
| Plaintiffs-Respondents, | ) ) |
| v. | ) ) |
| COLDWELL BANKER LANDMARK, INC. n/k/a LANDMARK REAL ESTATE, INC., an Idaho Corporation, KELLY FISHER, an individual, TODD BOHN, an individual, and JOHN MERZLOCK, an individual | ) ) ) ) ) ) |
| Defendants-Appellants, | ) ) |
| and | ) ) |
| PROFESSIONAL ESCROW SERVICES, INC., an Idaho corporation, and RONALD BITTON, an individual, | ) ) ) ) |
| Defendants. | ) ) |

Pocatello, September 2010 Term

2010 Opinion No. 138

Filed: December 23, 2010

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Honorable Peter D. McDermott, District Judge.

The judgment of the district court is <u>affirmed</u> in part, <u>reversed</u> in part, and the case is remanded.

Merrill & Merrill, Chtd., Pocatello, for appellants. Thomas J. Lyons argued.

Lowell N. Hawkes, Chtd., Pocatello, for respondent Kuhn. Lowell N. Hawkes argued.

Norman G. Reece, P.C., Chubbuck, for respondents Scheis.

_____

1

J. JONES, Justice.

This is an appeal from a substantial jury verdict and judgment against appellants, arising out of a complicated real estate transaction. Pursuant to the final judgment, respondent Kuhn was awarded $896,531.70 in compensatory and punitive damages and respondents Schei were awarded $494,033.74. We affirm except for a portion of the attorney fee award.

## I.
## Factual and Procedural History

Darren and Jacquie Kuhn and Roger and Francis Schei (Darren Kuhn and Roger and Francis Schei are collectively referred to as the "respondents") entered into a multi-faceted real estate transaction in 1997. Both couples were represented by real estate agents working at Coldwell Banker Landmark, Inc. (Landmark). The Kuhns were represented by Todd Bohn, and the Scheis were represented by John Merzlock. Kelly Fisher was the designated broker of Landmark at the time of this transaction (Merzlock, Bohn, Fisher, and Landmark are collectively referred to as the "appellants"). The respondents alleged that in their efforts to complete the transaction, Bohn, Merzlock, Fisher and others, made material misrepresentations, breached contractual, fiduciary, and statutory duties, and engaged in conduct that was an extreme deviation from the standard of care expected of real estate agents.

The Scheis owned a home at 13235 Manning Lane in Tyhee, Bannock County, Idaho, which was a new construction "spec" home, built with their savings for the purposes of sale. In 1997, the Scheis hired Merzlock to list the Manning Lane property through Landmark for $349,500. Jacquie Kuhn saw the Manning Lane property and contacted Bohn, who had previously served as the Kuhn's real estate agent, to show them the property. At this time, the Kuhns owned a home at 712 Mountain Park, Chubbuck, Bannock County, Idaho, which they had purchased through Bohn in 1996 for approximately $179,000.

Starting in July of 1997, the Kuhns and the Scheis made a series of offers and counteroffers on the Manning Lane property, and ultimately settled on a purchase price of $296,500. The Kuhns took possession of the Manning Lane property shortly thereafter, but before a closing had occurred. Because the Scheis could not obtain financing for the Mountain Park property, Bohn executed a lease of the Mountain Park property to the Scheis on July 25, 1997. The lease was listed as a source of income on the Kuhns' loan paperwork for the purchase of the Manning Lane property. On October 17, 1997, in a closing at First American Title, the

2

Scheis conveyed the Manning Lane property to the Kuhns via warranty deed for $296,500. In turn, the Kuhns executed a promissory note in favor of the Scheis for $21,313.30 secured by a deed of trust on the Manning Lane property. The amount represented the equity the Kuhns had in the Mountain Park property. The Kuhns intended to pay the $21,313.30 note, which was due within a year of its execution, by the sale of the Mountain Park property. The Scheis also carried $14,875 of the financing obtained by the Kuhns in order to purchase the Manning Lane property. To do so, the Kuhns executed another promissory note in favor of the Scheis for $14,875, secured by a deed of trust on the Manning Lane property.

To complete the trade for the Mountain Park property, the respondents executed a lease with the option to purchase, requiring the Scheis to pay the Kuhns $1,407.50 in monthly rent. The Kuhns also signed a warranty deed conveying the Mountain Park property to the Scheis, which was to remain unrecorded at Professional Escrow Services until the Mountain Park property was sold. The Kuhns also executed a note in the amount of $7,080 in favor of Landmark, secured by a deed of trust on the Manning Lane property. The note was for real estate commissions.

Upon execution of the lease, the Scheis listed Mountain Park with Landmark through Merzlock. When the property failed to sell, the Scheis listed Mountain Park with another agent who was also unsuccessful in finding a buyer. In 1999, the Scheis defaulted on the lease payment multiple times, resulting in a default on the Kuhn's mortgage on Mountain Park. The mortgage lender on Mountain Park ultimately foreclosed in October of 2000, and obtained a $20,000 deficiency judgment against the Kuhns.

The respondents filed suit against the appellants, along with others who are not relevant to this appeal, for breach of contract, unjust enrichment, fraud and misrepresentation, breach of the duty of good faith and fair dealing, breach of statutory duties, and civil racketeering. The complaint was later amended to include breach of fiduciary duties and punitive damages. After a four-week trial, the jury found the appellants liable for breach of fiduciary duty, negligence, breach of express or implied contract and unjust enrichment, and imposed punitive damages against Merzlock, Bohn, and Landmark. The appellants filed multiple post-trial motions, which were denied. The appellants timely appealed to this Court.

## II.
## Issues on Appeal

I.      Whether the district court erred in denying the appellants' post-trial motions?

II.     Whether the district court erred in its formulation of jury instructions and the special verdict form?

III.    Whether the court erred in excluding fact testimony?

IV.     Whether the district court erred in allowing the respondents to amend their complaint to state a claim for punitive damages?

V.      Whether the district court erred in allowing expert testimony on the issue of outrageous conduct?

VI.     Whether the punitive damages awarded by the jury were unconstitutionally excessive?

VII.    Whether the district court should have awarded attorney fees and whether the fee award was excessive?

VIII.   Whether the respondents are entitled to attorney fees on appeal?

## III.
## Discussion

It must be said at the outset that this case does not readily lend itself to review. On occasion, the parties make assertions in their briefs that are not supported by citations to the record. The parties hotly contest factual issues, each claiming that the other side is obfuscating or misrepresenting facts. The jury found appellants liable to respondents on three claims—breach of fiduciary duty, negligence, and breach of contract. The jury was instructed that "[t]he defendant realtors herein owed a fiduciary duty to each of the Plaintiffs." Although appellants objected at trial to this and other fiduciary duty instructions, they have not raised the issue on appeal. There is no indication in the record as to how the fiduciary duty arose, particularly in light of Idaho Code section 52-2094, which provides that "the duties and obligations owed to a represented client in a regulated real estate transaction are not fiduciary in nature" absent a written agreement to the contrary.[1] There were a number of contracts entered into between and among the parties

---

[1] The jury awarded damages in this case based upon breach of appellants' fiduciary duties to the respondents. Inexplicably, however, the appellants do not argue on appeal that Idaho Code section 54-2094 strictly limits a breach of fiduciary duty cause of action against a real estate agent. Under the statute,

4

and additional contracts asserted by some parties. The parties have not made clear which contract the jury determined to have been breached. The parties vigorously disagree as to whether the damages, particularly the punitive damages, were excessive and whether there might have been duplicate awards. However, there is no indication by the parties as to how the elements of damage might have been presented to the jury, or calculated and allocated by the jury, so that the Court could make an informed determination of the damage issues. The lion's share of the punitive damages were awarded against Landmark, which subsequently went bankrupt. The Court is in the dark as to whether any award against Landmark is collectible and, if not, whether the Landmark awards are moot. With that preface, the various issues will be examined in the order listed above.

## A. Post-Trial Motions

### 1. J.N.O.V. Motion

Appellants contend that the district court erred by denying their motion for judgment notwithstanding the verdict (J.N.O.V.) under I.R.C.P. 50(b), arguing that: (1) there was no evidence indicating the appellants had altered an exhibit; (2) Bohn had permission from Jacquie Kuhn to sign the lease; and (3) there is no evidence that the appellants' conduct caused damages to the respondents. The respondents counter by arguing that the appellants' arguments are contrary to the great weight of the evidence in this case.

When considering an I.R.C.P. 50(b) motion, the district court must decide "whether there is substantial evidence in the record upon which the jury could properly find a verdict for the party against whom the [J.N.O.V.] is sought." *Schwan's Sales Enters., Inc. v. Idaho Transp. Dep't*, 142 Idaho 826, 830, 136 P.3d 297, 301 (2006). On a motion for a J.N.O.V., the moving party admits the truth of the adverse evidence and every inference that may legitimately be

---

While this act is intended to abrogate the common law of agency as it applies to regulated real estate transactions, nothing in this act shall prohibit a brokerage from entering into a written agreement with a buyer or seller which creates an agency relationship in which the duties and obligations are greater than those provided in this act. However, unless greater duties are specifically agreed to in writing between the brokerage and a represented client, the duties and obligations owed to a represented client in a regulated real estate transaction are not fiduciary in nature and are not subject to equitable remedies for breach of fiduciary duty.

I.C. § 54-2094. In this case, there was no contractual agreement in the record establishing a fiduciary relationship between the parties. Thus, the cause of action did not appear to be available to the respondents.

drawn from the evidence. *Id.* In this case, the district court found that "there was sufficient evidence of quantity, quality, and probative value that reasonable minds could reach the same conclusion as the jury."

> When reviewing a ruling of the district court on a motion for J.N.O.V.:

> Our task on appeal of an order denying a motion for [JNOV] the verdict is the same as that of the trial judge is when he or she considers the motion. Whether the trial court should have entered a judgment notwithstanding the verdict is purely a question of law.

*Id.* (citation omitted). We find no fault with the trial court's ruling. There is ample evidence in the record to support each of the three claims asserted by respondents. The testimony of Darlene Manning, which is discussed in Part III.E, supports respondents' contention that the appellants violated their professional responsibilities to the respondents by trying to obtain financing when the property values did not support it, by altering documents and by double contracting, among other things. The notes of appellants' expert, Gene Galloway, taken while preparing his testimony, attest to appellants' disregard of their professional responsibilities.[2] There was certainly evidence in the record that the exhibit in question had been altered, that it was in possession of appellants, and it would certainly be proper to infer that the alteration had been made by one of the appellants. Whether or not Bohn had permission from Jacquie Kuhn to sign the lease, there was sufficient evidence in the record to support the jury's verdict. And, there was certainly evidence that respondents sustained damages as a result of appellants' conduct.

The appellants essentially ask this Court to reweigh the evidence and pass on the credibility of the various trial witnesses. That we will not do in considering a J.N.O.V. motion. Our job is to view all of the evidence and inferences drawn from the evidence in the light most favorable to the respondents. While there was conflicting testimony in the case concerning whether the appellants modified certain exhibits, whether such alleged modifications caused the

---

[2] Mr. Galloway was called as an expert to testify on appellants' behalf regarding their professional conduct in this case. During his review of the pertinent documents and depositions, Mr. Galloway made some notes, the content of which was not particularly helpful to appellants' case. Those notes were obtained in discovery and made their way into the court record as exhibits, as well as during his cross examination. While his trial testimony tended to lessen the detrimental statements made in the notes, the comments in the notes lent support to respondents' claims of misconduct. Among other things, the notes indicated that "the defendants are either feigning ignorance, stupid or plain dumb," various actions of the defendants are characterized as "outrageous," Bohn was being "evasive" about the lease, "agent and broker were remiss, derelict in their responsibility to protect their clients," "why would documents be back-dated—sloppy work," "this is hard to believe and sloppy," and "agents had been outrageous in their conduct."

6

respondents any harm, whether Bohn had authority from Jacquie Kuhn to sign the lease, and whether the appellants' acts caused the respondents any damage, there is sufficient evidence to resolve those conflicts in favor of the respondents and to support the jury's verdict. Therefore, the district court did not err by denying appellants' motion for J.N.O.V.

### 2. New Trial Motion

The appellants argue that they are entitled to a new trial pursuant to: I.R.C.P 59(a)(1) for irregularity in the district court proceedings preventing the appellants from having a fair trial; I.R.C.P 59(a)(4) for newly discovered material evidence that the moving party could not reasonably have discovered and produced at trial; I.R.C.P 59(a)(5) for excessive or inadequate damages given under the influence of passion or prejudice; I.R.C.P 59(a)(6) for insufficiency of the evidence supporting the damage award; and I.R.C.P 59(a)(7) for errors in law. Idaho R. Civ. P. 59(a)(1), (4), (5), (6), & (7). The district court denied the motion on each of the asserted grounds. We affirm.

I.R.C.P. 59(a) authorizes an aggrieved party to make a motion for a new trial on one of several specified grounds. The grant or denial of a motion for a new trial is reviewed by this Court under an abuse of discretion standard. *Crowley v. Critchfield*, 145 Idaho 509, 512–13, 181 P.3d 435, 438–39 (2007). When determining whether the district court abused its discretion, this Court considers whether: (1) the trial court correctly understood the issue to be one of discretion; (2) the trial court acted within the outer bounds of its discretion and consistently with the legal standards; and (3) the trial court reached its decision through the exercise of reason. *Id.* at 512, 181 P.3d at 438.

All motions for a new trial under I.R.C.P. 59(a) must be filed within fourteen days after the entry of judgment. Idaho R. Civ. P. 59(b). A trial court acts within its discretion in denying an untimely motion for new trial. *Johannsen v. Utterbeck*, 146 Idaho 423, 429, 196 P.3d 341, 347 (2008).

We affirm the district court's denial of appellants' Rule 59(a) (1), (4), (6) and (7) motions for a new trial because appellants failed to file the required documentation within the timelines set out in the rule. A motion for a new trial under I.R.C.P. 59(a) (1) and (4) "must be accompanied by an affidavit stating in detail the facts relied upon in support of such motion for the new trial." Idaho R. Civ. P. 59(a)(7) (emphasis added). Affidavits supporting a motion for new trial must be served with the motion. Idaho R. Civ. P. 59(c). Appellants' motion for a new

7

trial was not accompanied by an affidavit and, thus, was procedurally defective. *Johannsen*, 146 Idaho at 429, 196 P.3d at 347. As such, the court properly denied appellants' rule 59(a)(1) and (4) motions for a new trial. Similarly, in order to timely file a motion for new trial under subsections (6) and (7), the motion "<u>must</u> set forth the factual grounds therefor with particularity." Idaho R. Civ. P. 59(a)(7) (emphasis added). Appellants' motion for a new trial fails to provide any factual grounds, and only suggests that the motion "*will be* supported by a Memorandum in Support of Alternative Motions that *will be* filed with the Court." The judgment in this matter was filed on February 5, 2003. Appellants' new trial motion, which was strictly generic in nature, was filed on February 14. It was not until May 5, 2003, that appellants filed their memorandum specifying the grounds for the motion, together with their supporting affidavits. Because there was no factual support filed in support of these motions within the fourteen-day period prescribed by the rule, the district court properly denied the motion. Although the court denied the motion based on the merits of appellants' claim, it is well-settled that "[w]here an order of a lower court is correct, but based on an erroneous theory, the order will be affirmed upon the correct theory." *Andre v. Morrow,* 106 Idaho 455, 459, 680 P.2d 1355, 1359 (1984).

Appellants' motion for a new trial under 59(a)(5) can be considered on review by this Court because there is no additional filing requirement, such as pleading with factual particularity or filing an accompanying affidavit in support. The appellants argue that "[i]t is clear, on its face, that the jury's decision was based on passion or prejudice rather than the evidence" because the jury awarded damages in the amount of $1,201,909.90 (the total of the Scheis' award of $453,163.18 and Kuhn's award of $748,746.68) when the value of the two homes was only $471,500.00. In addressing the 59(a)(5) motion, the district court ruled that:

> To grant a new trial due to passion or prejudice the Court must weigh the evidence, determine what amount it would have awarded, and determine whether the disparity between the two is so great as to shock the conscience of the Court.
>
> The Court finds that in weighing the evidence that there would not have been such a disparity between what the Court would have awarded and what was awarded by the jury to be so great that the difference could only be explained that the jury's award was based on passion, prejudice or that it would have shocked the conscience of the Court.
> . . .
> . . . This Court may not have awarded, in a court trial, the amounts that the jury did award in this matter, but the difference between what the Court would have

awarded is not so great that it shocked the conscience of the Court when it heard the verdict.

The appellants assert that the court's ruling was not a sufficient justification for denying the motion and, thus, was an abuse of discretion.

A new trial is warranted where the jury's determination of damages appears to have resulted from passion or prejudice. *Quick v. Crane*, 111 Idaho 759, 769-70, 727 P.2d 1187, 1197-98 (1986); Idaho R. Civ. P. 59(a)(5). In determining whether damages are excessive or inadequate, the district court must weigh the evidence and compare the jury award with the award that it would have imposed. "If the disparity is so great that it appears to the trial court that the award was given under the influence of passion or prejudice, the verdict ought not stand." *Quick*, 111 Idaho at 768, 727 P.2d at 1196 (quoting *Dineen v. Finch*, 100 Idaho 620, 625, 603 P.2d 575, 580 (1979)). The district court weighed the jury's damage awards and concluded that, while it may not have awarded the amounts the jury did, the amounts were not so high as to shock the conscience of the court. This consideration is sufficient to meet the court's duty as prescribed by *Quick*. Therefore, the district court did not abuse its discretion in denying the appellants' motion for a new trial under I.R.C.P. 59(a)(5).

### 3. Rule 59(e) Motion

Appellants contend that the district court erred by declining to alter or amend the judgment in two respects, pursuant to I.R.C.P. 59(e). First, they argue that the judgment obtained by the Scheis should be reduced by $11,825, which, according to the special verdict form, represented a "refund of the real estate commission they paid to [Landmark] regarding the sale of Manning Lane." The appellants argue that the Scheis' attorney conceded in his closing argument that they were not pursuing "any damages from Manning Lane" and, thus, the final award should be reduced to reflect such concession. Second, appellants claim that Kuhn was awarded $14,875 in damages flowing from the deed of trust to the Scheis, but that Kuhn did not suffer any damages since he never made payment on the deed of trust. They contend that the Scheis were also awarded $14,875 in damages flowing from the same deed of trust, which amounts to a double recovery. Thus, they assert that Kuhn's judgment should have been reduced by the $14,875.

9

"This Court reviews an order denying a motion to alter or amend a judgment for abuse of discretion." *In re SRBA*, 149 Idaho 532, 542, 237 P.3d 1, 11 (2010). Upon review of the record, we decline to grant relief on either issue.

With regard to the $11,825 that the jury specifically awarded as a refund of the real estate commission on the Manning Lane property, the district court ruled:

> The Court finds that the Jury was instructed that they could refund any or all of the commission depending on how they viewed the evidence submitted regarding the commission on Manning Lane. The Jury did consider the evidence and awarded a portion of the commission to the Scheis. If, in fact, [their attorney's] closing argument is interpreted to mean he requested the jury award no damages to Scheis on this issue, the same is not relevant. The comments by [their attorney] were not stipulations of fact nor were they binding on his clients or the jury.

The district court, having been present when the Scheis' attorney made the remark regarding damages, was in the best position to put the remark in context. The court did not consider it to be a binding concession. Indeed, the jury verdict referred to the $11,825 as a "refund," rather than damages. This Court noted in *Rockefeller v. Grabow* (*Rockefeller II*) that a real estate agent who breaches his fiduciary duty may forfeit all or part of the commission. 139 Idaho 538, 543-44, 82 P.3d 450, 455-56 (2003). The refund of a commission is more in the way of an equitable restitution measure, as opposed to damages. Thus, we decline to alter or amend the judgment in this regard.

Additionally, we decline to rule on appellants' suggestion that the jury made a double award in the amount of $14,875 in damages flowing from the deed of trust. The special verdict form contains no reference to $14,875 in damages flowing from the deed of trust, but rather only provides a total compensatory award. Thus, this Court is unable to determine whether the jury even included this amount in calculating Kuhn's total damages, and appellants make no reference to any document in the record that could provide enlightenment on this issue. Therefore, we decline to disturb Kuhn's award.

### 4. Rule 60(b)(3) Motion

The appellants assert that the district court erred by denying their I.R.C.P. 60(b)(3) motion to set aside the judgment for fraud. The appellants argue that the allegations that "Darren Kuhn committed perjury, hid evidence and information about a material witness, and hid information about his credit rating" amounts to fraud upon the court. The burden is on the

claimant to prove each element of fraud by clear and convincing evidence. *Golder v. Golder*, 110 Idaho 57, 59, 714 P.2d 26, 28 (1986).

> The district court ruled that:

> there was no misconduct on the part of any of Plaintiffs' attorneys nor Plaintiffs. This Court has reviewed all documents presented by counsel and concludes Plaintiffs' attorneys did not intentionally mislead defendants' attorneys regarding the location of Jacqueline Kuhn Jordan. Darren Kuhn did not have knowledge of the appraisal performed by Robert Jones on Manning Lane at the time of the controversy between the parties herein and that Mr. Kuhn did not commit perjury re: his credit history or any other fact. This Court believed Mr. Kuhn's testimony to be entirely credible and, obviously, so did the jury.

Here, the appellants simply ask this Court to discredit the testimony of the respondents' witnesses and second guess the findings of the jury and district court. The appellants' assertions of fraud were specifically addressed by the district court, and the district court's findings are not abusive of its discretion.

### B. Jury Instructions

Appellants contend that the district court erred in refusing to instruct the jury on the statute of frauds and by utilizing a special verdict form that was "convoluted and confusing." Respondents point out that the first objection applies only to the breach of contract claim and assert that the objection is not well founded with regard to that claim. With regard to the latter issue, the respondents assert that the issue was not properly raised.

With regard to the statute of frauds issue, the appellants argue that the court erred in allowing testimony, over their objection, that the parties entered into an agreement whereby the appellants would buy the Mountain Park property if it had not been sold within one year. The appellants do not challenge this evidentiary ruling on appeal. However, they do assert that the district court should have given a statute of frauds instruction, as they requested, as a curative measure.

The problem with appellants' contention is that they fail to demonstrate how the failure to instruct on the statute of frauds affected their substantial rights. *See* Idaho R. Civ. P. 61 (court to disregard error that does not affect the substantial rights of a party). As previously mentioned, there is a certain amount of confusion in the record about the identity of the contract that the jury found appellants to have breached. The jury instructions say nothing, however, of a contract whereby the appellants would purchase the Mountain Park property. Only two contract issues are

11

addressed in the jury instructions. First and foremost are the real estate representation contracts between appellants and respondents. The instructions specify that the contracts included a covenant of good faith and fair dealing and that a violation of that covenant in the representation contracts will support an award of damages. The instructions also note that Idaho Code section 54-2004 prohibits licensed real estate agents from using a double contract, defined as "two (2) or more written or unwritten contracts of sale, purchase and sale agreements, loan applications, or any other agreements, one (1) of which is not made known to the prospective loan underwriter or the loan guarantor, to enable the buyer to obtain a larger loan than the true sales price would allow, or to enable the buyer to qualify for a loan which he or she otherwise could not obtain." I.C. § 54-2004(19).

Based on a review of the record, it is highly likely the jury found that the appellants had violated the good faith and fair dealing contract provision, although there was certainly evidence to support a finding that they had breached the double contract prohibition. However, appellants fail to show how the alleged repurchase contract, which was heavily disputed in the evidence, played any part in the jury verdict on the breach of contract issue. Therefore, even if there was error in failing to give the statute of frauds instruction, it was nothing more than harmless error.

With regard to the special verdict form, it is, without a doubt, convoluted and confusing. Indeed, the special verdict form is largely responsible for the woe that has been sustained by the appellants in this case. Had the appellants objected to the special verdict form below, they might have preserved an issue for review on appeal. However, no objection was lodged in the district court so we decline to address any challenge to the special verdict form on appeal.

At one point during the conference on jury instructions, the appellants did raise concern about instructing the jury on the breach of contract claim and also raised a concern regarding the allocation of damages among and between the appellants. They argued to the district court that there was the potential for double recovery on the various claims being asserted. A discussion ensued wherein the district court concluded, "Well, we'll name each defendant individually on the breach of contract, and if [the jury] answered 'yes' we'll ask them to assess the damages to each plaintiff for the breach of contract for that defendant." All parties assented to the change. Appellants do not point to any place in the record showing that they objected to the special verdict form after it was redrafted in final form by the district court. Therefore, we will not address the issue on appeal.

12

## C. Evidentiary Rulings

### 1. Exclusion of Jacquie Kuhn's Testimony

The appellants argue that the district court erred by prohibiting testimony regarding out-of court statements made by Darren's ex-wife, Jacquie. The appellants argue that because Jacquie Kuhn acted as Darren Kuhn's agent in the Manning Lane transaction, the statements are an admission of a party-opponent that should have been allowed under Idaho Rule of Evidence 801.

The Idaho Rules of Evidence require that when appealing an exclusion of evidence, the "substance of the evidence was made known to the court by offer or was apparent from the context . . ." Idaho R. Evid. 103(a). The purpose of this rule is to preserve a record for appeal and to enable the court to rule on the evidence's admissibility. *See State v. Joslin*, 145 Idaho 75, 82, 175 P.3d 764, 771 (2007). Appellants in this case failed to adequately identify the substance of the evidence allegedly admissible under Rule 801. The offer of proof before the district court only included counsel's reference to "some of the things that Jackie Kuhn may have said or may have not said . . ." This is not a sufficient offer of proof for this Court to determine whether Jacquie's statements would fall within the party opponent exception to the hearsay rule. As such, we decline to address the merits of the issue.

### 2. Exclusion of Les Lake's Testimony

Appellants also argue that the district court erred by excluding the testimony of Les Lake, who was commissioned by the Idaho Real Estate Commission to investigate the complaint filed against the appellants. Additionally, the appellants argue the court erred by prohibiting the introduction of a letter authored by Lake indicating that the respondents had not committed any wrongdoing.

A trial court's decision to exclude hearsay evidence is reviewed for an abuse of discretion. *Jeremiah v. Yanke Mach. Shop, Inc.*, 131 Idaho 242, 246, 953 P.2d 992, 996 (1998). Specifically, this Court asks: "(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason." *Id.*

Idaho Rule of Evidence 803(8) allows the admission of public records regarding "matters observed pursuant to duty imposed by law and as to which there was a duty to report." Idaho R.

Evid. 803(8). However, this rule specifically excludes from admission any "factual findings resulting from special investigation of a particular complaint, case, or incident, except when offered by an accused in a criminal case." Idaho R. Evid. 803(8)(D). For example, in *Jeremiah* this Court held that 803(8)(D) would properly exclude factual findings of a special investigation conducted by the Idaho Human Rights Commission, as well as testimony from its director related to those factual findings. 131 Idaho at 247, 953 P.2d at 997.

In this case, the court reasoned that if the special investigation report created for the Idaho Real Estate Commission was not admissible pursuant to 803(8)(D), then testimony by Lake regarding the same would also be inadmissible. Pursuant to our holding in *Jeremiah*, we find no abuse of discretion in the court's exclusion of Lake's testimony. While appellants argue *Jeremiah* is distinguishable because the director in *Jeremiah* did not actually conduct the investigation as Lake did in this case, this distinction ignores the plain holding of *Jeremiah*. The rule of that case properly focuses on what testimony encompasses the factual findings resulting from the special investigation, and does not focus on the person who is providing the testimony. Therefore, *Jeremiah* applies here and, consequently, the district court did not abuse its discretion in excluding Lake's testimony.

### D. Allowance of the Punitive Damage Claim

Appellants contend that the district court "erred in its allowing Kuhn and the Scheis to move forward with their punitive damages claims." In support of their contention, they set out the version of Idaho Code section 6-1604, which was in effect at the time and then argued that the evidence at trial did not support an award of punitive damages. They do not, however, assert that the district court abused its discretion in allowing respondents to amend their complaint to assert a punitive damage claim. Such a determination by the court is reviewed under an abuse of discretion standard. *Hall v. Farmers Alliance*, *Mut. Ins. Co.*, 145 Idaho 313, 319, 179 P.3d 276, 282 (2008).

Respondents did file a motion to amend to assert a punitive damage claim, to which appellants objected. No order granting leave to amend appears in the record but respondents did, indeed, file an amended complaint asserting a punitive damage claim. While this Court does not have the benefit of the district court's reasoning for granting the motion, and while appellants do not provide any enlightenment as to how the court abused its discretion, the record discloses that the motion to amend was well founded. The motion was supported by the Affidavit of Darlene

14

Manning, whose testimony is capsulized below, and the affidavit certainly provided grounds for allowing the amendment. As the record supports the amendment and because the appellants do not explain how the court abused its discretion, we find the appellants' contention to be without merit.

### E. Admission of Expert Testimony

The appellants argue that the district court erred in allowing the expert testimony of Darlene Manning because it related to the standard of care required of real estate agents, transgressing this Court's holding in *Rockefeller v. Grabow*, 136 Idaho 637, 39 P.3d 577 (2001) (*Rockefeller I*). The respondents contend that the district court acted within its discretion in allowing Manning to testify as to the deviation of appellants' conduct from the standard of care. They point out that the judge did not permit, and she did not provide, testimony on the standard of care.

A trial court may admit expert testimony where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." Idaho R. Evid. 702.[3] This rule necessarily excludes expert testimony on matters that are within the common sense of the jury, because such information does not help the jury resolve issues of fact. *Warren v. Sharp*, 139 Idaho 599, 606, 83 P.3d 773, 780 (2003). The determination of whether expert testimony will assist the trier of fact "lies within the broad discretion of the trial court." *Sliman v. Aluminum Co. of America*, 112 Idaho 277, 285, 731 P.2d 1267, 1275 (1986). In determining whether the district court has abused its discretion, this Court must determine whether the district court: (1) perceived the issue as one of discretion; (2) acted within the outer boundaries of that discretion consistent with applicable legal standards; and (3) reached its decision through the exercise of reason. *Chapman v. Chapman*, 147 Idaho 756, 760, 215 P.3d 476, 480 (2009). Even where a district court abuses its discretion in admitting expert testimony, this determination will not be disturbed on appeal unless the admission prejudiced a substantial right of the party. Idaho R. Civ. P. 61.

Appellants correctly contend that it would be inappropriate to allow an expert to testify as to a clearly established standard of care. As the court noted in *Rockefeller I*, such testimony would invade the province of the jury, leading to jury confusion. *Id.* at 647, 39 P.3d at 587. In *Rockefeller I*, we determined there was no abuse of discretion in the district court's decision to

---

[3] An expert must also be qualified by their "knowledge, skill, experience, training or education." Idaho R. Evid. 702.

exclude testimony regarding an agent's standard of care. *Id.* That standard had been clearly defined as the "duty of loyalty, good faith and fair dealing." *Id.* Pursuant to such standard, "the jury could readily apply the facts to the legal standard without the assistance of expert testimony." *Id.*

The question in this case is not whether the judge abused his discretion by excluding testimony but whether he abused his discretion by admitting it. The testimony appellants believe should have been excluded dealt not with the standard of care expected of real estate agents but, rather, whether appellants' actions constituted an extreme deviation from reasonable standards of conduct such as to expose them to liability for punitive damages.

The district court made the following comments when considering whether to admit Manning's proffered testimony:

> [I]n this case the specialized knowledge of this expert, I believe, will assist the trier of fact to understand the evidence or to determine, maybe, a fact in issue here.
> Now, there has already been testimony this is the most complex real estate transaction some other experts have ever been involved with. There has been this subject brought up by the defendants of limited dual agents, and I just think this testimony will or could—because I'm not sure what it's going to be—assist the jurors in making the decision.
> She does not and will not be called, Mr. Hawkes, to state the agents—all the defendants owed all the plaintiffs a duty of loyalty, good faith, and fair dealing because that's the standard in Idaho and that's not an issue, and the Court is going to instruct the jury on that.

These comments show that the court recognized the complexity of the real estate transaction at issue, and the likelihood that an expert could assist the jury in making factual determinations, such as whether appellants' conduct was an extreme deviation from the standard of conduct.

Manning identified herself as the "foremost expert at the present time" in real estate ethics based on her twenty-plus years of experience as a licensed real estate agent, her various professional designations, her position on the Idaho Professional Standards Committee, and her position as an accredited instructor in the area of ethics. Based on this experience, she testified that it was her opinion that the appellants' conduct was "fraudulent and outrageous and . . . done with an understanding and a conscious disregard for the likely consequences of their conduct." She gave similar testimony regarding each allegation of misconduct alleged by the respondents.

16

In considering whether to allow her testimony, the district court acknowledged the limitation in *Rockefeller I* that an expert will not be permitted to testify as to a legal standard. Manning was not allowed to testify as to the applicable standard of care. The court's decision to allow her testimony was within the bounds of authority because experts can testify as to the outrageous nature of a party's conduct where it is likely to assist jurors in determining the issue of punitive damages. *See Sliman*, 112 Idaho at 285, 731 P.2d at 1275 (allowing expert testimony that "[i]t's my opinion that the failure to correct this problem, or to warn, at least warn the public about it, is an extreme deviation from the customary practice in the industry."); *Vendelin v. Costco Wholesale Corp.*, 140 Idaho 416, 429, 95 P.3d 34, 47 (2004) (discussing foundation of an expert's testimony which concluded that Costco's inadequate training of employees on stacking of merchandise was "an extreme deviation from industry standards of care"); *Garnett v. Transamerica Ins. Servs.*, 118 Idaho 769, 781, 800 P.2d 656, 668 (1990) (noting an expert's testimony, that the insurance company's treatment of the insurance claim at issue was an extreme deviation from the standard of care, supported the trial court's decision to submit the issue of punitive damages to the jury). Thus, we find no abuse of discretion with the admission of Manning's testimony.

## F. Punitive Damage Award

The appellants argue that the punitive damage awards in this matter should be vacated because they are excessive and unconstitutional. The appellants argue that the awards were excessive because there is no evidence to support them. The appellants' constitutional arguments are centered on the amount of the awards, which they contend violate their due process rights because of the high damage ratios. The respondents argue that the punitive damage awards are amply supported by the expert testimony in this matter. They also contend that the awards satisfy all of the policies behind punitive damage awards and constitute appropriate damage ratios.

### 1. Evidentiary Support

Under the statute in effect at the time of trial, punitive damages required a showing by a "preponderance of the evidence of the existence of 'oppressive, fraudulent, wanton, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted.'" *Hall*, 145 Idaho at 325, 179 P.3d at 288 (quoting 1987 Idaho Sess. Law 576). When reviewing punitive damage awards, this Court has noted:

17

An award of punitive damages will be sustained on appeal only when it is shown that the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard of its likely consequences." The justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that be termed "malice, oppression, fraud, or gross negligence;" malice, oppression, wantonness;" or simply "deliberate or willful."

*Walston v. Monumental Life Ins. Co.*, 129 Idaho 211, 220, 923 P.2d 456, 465 (1996) (quoting *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 905, 665 P.2d 661, 669 (1983)). Punitive damages are not favored and should only be awarded in the most unusual and compelling circumstances within narrow limits. *Walston*, 129 Idaho at 221, 923 P.2d at 466. The issue for this Court is not whether the jury should have awarded punitive damages, but whether it could have awarded them based on the evidence before it. *Gunter v. Murphy's Lounge, LLC*, 141 Idaho 16, 29, 105 P.3d 676, 659 (2005).

The evidence in this matter supports an award of punitive damages. There is evidence regarding misrepresentations made by the appellants as to their ability to sell the Mountain Park property, the value of the properties, and the normalcy of charging a commission for a lease, and closing transactions at multiple title companies. There is also evidence that appellants failed to disclose appraisals and other material information regarding the value of the properties. Additionally, there is evidence that appellants engaged in double contracting in an effort to obtain financing for the Kuhns on the Manning Lane home, despite the statutory and ethical prohibitions. There is also evidence that appellants altered documents, post-dated documents, and signed documents without the client's authorization. Indeed, the evidence suggests that appellants' made every effort to make the transaction go regardless of ethical and professional standards. Although many of these allegations were in dispute, this Court finds there was sufficient evidence to warrant the imposition of punitive damages.

### 2. Constitutionality

This Court exercises free review over constitutional questions; however, in undertaking that analysis, this Court will defer to the trial court's factual findings. *Hall*, 145 Idaho at 320, 179 P.3d at 283. A jury's award of punitive damages is freely reviewed. *Id.*

A punitive damage award can violate the notice requirements embodied in the right to due process when an award is so grossly excessive that it no longer bears any relation to the

legitimate state interest in punishing and deterring wrongful conduct. *Id.* at 320-21, 179 P.3d at 283-84. Consequently, the first inquiry when reviewing a punitive damage award involves a comparison between the State's legitimate interests in punishing the conduct at issue and the amount of the award. *Id.* at 321, 179 P.3d at 284. To conduct this inquiry, we consider three guideposts, which include: (1) the degree of reprehensibility of the conduct; (2) the disparity between the harm or potential harm suffered and the punitive damages awarded; and (3) the difference between the award and the authorized civil remedy in similar cases. *Id.*

This Court recognizes a legitimate state interest in protecting the integrity of fiduciary relationships. *Griff, Inc. v. Curry Bean Co.*, 138 Idaho 315, 322, 63 P.3d 441, 448 (2003). Nonetheless, this Court declines to analyze the alleged excessiveness of this award because we are without the proper resources to do so.

Pursuant to our guideposts, this Court must analyze the disparity between the harm suffered and the punitive damages awarded to determine whether a punitive damage award is excessive. However, due to the inadequacies of the special verdict form used in this case, we are unable to make such a determination. For example, there is no itemization of specific damages used in reaching the total compensatory amount awarded. Rather, there is simply a total for damages resulting from breach of fiduciary duty and/or negligence as to Kuhn, and a separate total as to Schei. There are similar totals for damages resulting from breach of contract, but without any indication as to which contract the jury considered to be breached, and there were several at issue in this case. These shortcomings trickle over into the award for punitive damages because there is only a single total of punitive damages imposed against Bohn, Merzlock and Landmark, for Kuhn and Schei individually, without any indication as to how the damages might have been calculated or allocated. Thus, we have no way of knowing whether the punitive damage awards were a result of appellants' breach of contract, breach of fiduciary duty, or negligence, or some combination thereof. Without this information, it is nearly impossible to determine a base compensatory damage award relevant to a corresponding punitive damage award, such that we could actually consider its excessiveness.

Somewhat concerning is the special verdict form's treatment of Landmark, which was assessed $800,000 in punitive damages ($300,000 for Schei and $500,000 for Kuhn). Landmark is not identified as a party having breached a fiduciary duty or as a party having breached a contract. The special verdict form did not allow the jury to apportion any liability to Landmark

19

or even find that it was negligent, nor did it require the jury to separately apportion compensatory damages for breach of contract between Merzlock, Bohn, and Fisher, or even ask the jury to impose damages for breach of contract against Landmark. Nevertheless, Landmark is listed as a defendant liable for the total compensatory damage award for breach of fiduciary duty and for breach of contract. Additionally, the jury instructions make the assumption that Merzlock, Bohn, and Fisher are all agents of Landmark and, thus, Landmark is vicariously liable for any tort damages imposed. Because of the confusion already explained regarding the compensatory damage awards, there is simply no way to identify how the jury used this instruction to calculate its final award against Landmark.

In sum, even though there is concern regarding the punitive damage award against Landmark, this Court is simply without the necessary record to adequately address the excessiveness issue. Again, had the appellants made an objection to the special verdict form below and appealed the issue, perhaps a different conclusion might have resulted. However, under the circumstances presented, we decline to rule on whether the punitive damage awards in this case violated appellants' right to due process.

## F. District Court's Award of Attorney Fees

The appellants argue that there is no statutory or contractual basis for the district court's award of attorney fees in this case and, further, that the award of attorney fees was unreasonable. A court's determination of prevailing party status for attorney fees under I.R.C.P. 54(d)(1) will not be disturbed absent an abuse of discretion. *Shore v. Peterson,* 146 Idaho 903, 915, 204 P.3d 1114, 1126 (2009). The district court's award of attorney fees was proper pursuant to the attorney fee provision in the Exclusive Seller Representation Agreement signed by the parties.

Attorney fees will only be awarded when created by statute or contract. *Farm Credit Bank of Spokane v. Wissel*, 122 Idaho 565, 569 n.4, 836 P.2d 511, 515 n.4 (1992). Paragraph 14[4] of the agreement identifies that the agent owes the client a duty to perform the terms of the agreement, to use reasonable skill and care, and to promote the client's best interest in "good faith, honesty and fair dealing." Further, Paragraph 22 provides a broad basis for attorney fees for the prevailing party in "any suit or action or appeal on any matter relating to this Agreement . . . ." Appellants were found to have breached the contract, which violates the duty to perform the

---

[4] Although the Kuhns and the Scheis entered into separate Exclusive Seller Representation Agreements, both documents include the paragraphs cited in this opinion.

terms of Paragraph 14. Additionally, because that breach is a matter related to the cause of action as provided in Paragraph 22, the district court did not abuse its discretion in awarding attorney fees pursuant to the contract, in accordance with I.R.C.P. 54(d)(1).

However, the district court's award of attorney fees to Bron Rammell for his work after he was disqualified from the case was an abuse of discretion. The district court recognized that Rammell was disqualified early in the case because of his role as a witness, but nonetheless awarded him attorney fees for the work he did subsequent to his disqualification. Such an award is in blatant conflict with the clear letter of the law and represents an abuse of discretion. While the respondents assert that Rammell was only precluded from advocating for his client under Idaho Rule of Professional Conduct 3.7, any assistance provided to the respondents was express advocacy for his client; otherwise, the acts would not be compensable as attorney fees. Consequently, this Court remands the case for the elimination of any fee award to Rammell subsequent to his disqualification.

## G. Respondents' Attorney Fees on Appeal

The respondents request attorney fees on appeal pursuant to their respective representation agreements, as well as Idaho Code section 12-120(3). We find that the respondents have prevailed on appeal, despite a small amount of relief having been afforded appellants with regard to the issue of attorney fees. Because the provisions in the representation agreements provide a basis for attorney fees on appeal for the prevailing party, respondents are entitled to attorney fees pursuant to their agreements. *See Garner v. Bartschi*, 139 Idaho 430, 438, 80 P.3d 1031, 1039 (2003).

## IV.
## Conclusion

We affirm the judgment and verdict against appellants, except for the award of attorney fees for work performed by Rammell. We remand to the district court for the sole purpose of eliminating any unwarranted fee award to Rammell. Attorney fees and costs are awarded in favor of respondents and against appellants for this appeal.


Chief Justice EISMANN, and Justices BURDICK, W. JONES and HORTON CONCUR.