**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51849**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: March 27, 2026** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| CRYSTAL KEEFE, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Peter G. Barton, District Judge.

Judgment of conviction for trafficking in methamphetamine and possession of drug paraphernalia, affirmed.

Nevin, Benjamin & McKay, LLP; Dennis Benjamin, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kenneth Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

TRIBE, Chief Judge

Crystal Keefe appeals from her judgment of conviction for trafficking in methamphetamine and possession of drug paraphernalia. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Officer Merz, a certified Drug Recognition Expert (DRE), observed a male driver slumped over the steering wheel of a parked vehicle with the engine running. Officer Merz approached the vehicle as Deputy Vail and Deputy Cuellar arrived at the scene. Keefe was sleeping in the back seat. As Officer Merz neared the passenger's side, he observed a handheld torch--an item consistent with the use of controlled substances--on the center console.

Upon contact, Officer Merz noted that the male driver showed multiple signs of methamphetamine use. Based on his training and experience, Officer Merz concluded that the male driver appeared to be under the influence of a controlled substance. Officer Merz initiated a

1

driving under the influence (DUI) investigation. Officer McGee, a certified K-9 handler, arrived to assist the investigation with his K-9 partner, Astrid. Keefe was informed by Officer McGee that he intended to have Astrid conduct a free-air sniff around the vehicle and asked Keefe for consent if Astrid "came in contact" with the vehicle during the sniff. Keefe responded, "Do what you got to do" and affirmed when Officer McGee sought clarification. The officers ultimately identified Keefe as the owner of the vehicle.

Officer McGee then deployed Astrid while Officer Merz continued the DUI investigation. Officer McGee and Astrid were certified as a team by the Idaho Peace Officer Standards and Training (POST) in the detection of methamphetamine, heroin, and cocaine. Officer McGee testified that, based on his training and experience, Astrid exhibited behavior consistent with the detection of the odor of narcotics--closing her mouth, sniffing intensely around the seam on the passenger's side, moving underneath the vehicle, and her "tail change[d] from a wag back and forth to like a little rotor on a helicopter, it kind of [spun] a little bit." Astrid ultimately touched her paws to the rear bumper and sat, signaling her final trained alert.

Based on Astrid's alert, officers conducted a search of the vehicle. Officer McGee later testified that he did not obtain consent to search the vehicle from either Keefe or the male driver. During the search, Officer McGee located a glass pipe in the backseat where Keefe had been. He also discovered a safe in the rear cargo area containing a white crystalline substance resembling methamphetamine, along with drug paraphernalia. The State charged Keefe with trafficking in methamphetamine and possession of drug paraphernalia.

Keefe filed a motion to suppress, arguing that she did not consent to the search of the vehicle and that Astrid's alert occurred only after the K-9 made physical contact with the rear bumper. Following the hearing on the motion to suppress, the district court denied Keefe's motion. The matter proceeded to trial. Keefe attempted to admit a certified copy of the minute entry from her initial appearance (Exhibit 200). The State objected based upon concerns of unfair prejudice, and the district court sustained the objection. Keefe objected to testimony indicating that the quantity of methamphetamine seized exceeded amounts typical for personal use. The district court overruled Keefe's objection. Following deliberations that extended into the evening hours, the jury found Keefe guilty of trafficking in methamphetamine (Idaho Code

§§ 37-2732B(a)(4)(A), 18-204) and possession of drug paraphernalia (I.C. § 37-2734A). Keefe appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The appellate courts generally review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *State v. Rambo*, 173 Idaho 272, 278, 540 P.3d 974, 980 (2023). However, whether evidence is relevant is a question of law and is subject to de novo review. *Id*. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

Keefe argues that the district court abused its discretion by denying her motion to suppress, excluding Exhibit 200 from evidence, overruling her objection to irrelevant evidence, and requiring jury deliberations to begin after 5:00 p.m. Keefe also argues she is entitled to relief based on the cumulative error doctrine. The State responds that the district court correctly denied Keefe's motion to suppress and that the district court's evidentiary rulings were correct. The State also argues Keefe's challenge to jury deliberations is not preserved and that, even if Keefe had raised a claim of fundamental error in relation thereto, any such claim would fail. Finally, the State argues that, even if the district court erred, any evidentiary error is harmless, and that Keefe has

failed to show cumulative error because she has failed to show multiple errors. Keefe responds that her jury deliberation claim is preserved and that the State has failed to prove beyond a reasonable doubt that the alleged errors are harmless and that, even if the individual errors are harmless, the cumulation of errors warrants a new trial.

## A.     Motion to Suppress

Keefe argues the district court erred in denying her motion to suppress because she did not consent to a search and Astrid's contact with her vehicle constituted an unlawful search because it was the result of a trespass. She also asserts that this Court should abrogate *State v. Ricks*, 173 Idaho 74, 539 P.3d 190 (Ct. App. 2023) and adopt a bright-line rule requiring a reliable drug-detection dog to give a final trained alert in order to establish probable cause. Keefe further contends that the officer's testimony describing Astrid's behavior is insufficient because the final indication is not affirmatively shown on video.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.* The scope of consent under the Fourth Amendment is evaluated under an objective standard--what a typical reasonable person would have understood from the exchange between the officer and the suspect. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).

Here, the record supports the district court's determination that Keefe consented to the drug dog sniff. Officer McGee asked Keefe whether Astrid could sniff around Keefe's vehicle and advised that the sniff might involve Astrid coming in contact with the vehicle. Keefe responded, "to do whatever" Officer McGee "had to do with [Astrid]." When Officer McGee sought clarification--asking whether that was acceptable--Keefe again indicated agreement while making a circular motion with her hand. Officer McGee clarified if it would be okay if Astrid touched the vehicle, to which Keefe responded that it would be okay.

Based on this exchange, the district court determined that Keefe provided clear and unconditional consent for Astrid to conduct a free-air sniff around the vehicle, including the possibility that Astrid might make contact with the exterior of the vehicle. The district court further

4

found that Keefe's circular hand motion, viewed in the context of the conversation, indicated consent for Astrid to circle the vehicle. Because Keefe agreed to a drug dog sniff after being informed Astrid might come into contact with the vehicle, the district court concluded that such contact did not exceed the scope of Keefe's consent.

On appeal, Keefe argues the evidence shows she only consented to Astrid circling her vehicle--not to Astrid touching it. Keefe maintains that neither her circular hand motion nor her statement to "Do what you got to do" authorized physical contact with the vehicle. Keefe's argument overlooks a key factual finding by the district court. Officer McGee specifically requested permission for a drug dog sniff that ultimately occurred. Although Keefe's response did not expressly mention Astrid touching the vehicle, it permitted the type of sniff Officer McGee described--one that could involve Astrid making contact with the exterior of the vehicle. Accordingly, the district court did not err in denying Keefe's motion to suppress.

## B. Admission of Exhibit and Testimony

Evidence that is relevant to a material and disputed issue concerning the crime charged is generally admissible. *State v. Garcia*, 166 Idaho 661, 670-71, 462 P.3d 1125, 1134-35 (2020). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Idaho Rule of Evidence 401; *Garcia*, 166 Idaho at 670, 462 P.3d at 1134. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). Even relevant evidence, if unfairly prejudicial, can be excluded. *State v. McCabe*, 174 Idaho 653, 655, 559 P.3d 311, 333 (Ct. App. 2024); *see* I.R.E. 403.

### 1. Admission of exhibit

Keefe argues that the district court erred by denying admission of Exhibit 200 because it was relevant and not unfairly prejudicial. Keefe further contends that any prejudicial portions of Exhibit 200 could have been redacted.

At trial, the State introduced evidence of a jail call between Keefe and her mother the day after Keefe's arrest. The call included the following discussion:

| Mother: | So, what's, so what's happening? |
| Keefe: | (tearfully) Drug trafficking. |
| Mother: | I can't understand what you're saying. |

5

| | |
|---|---|
| Keefe: | Drug trafficking (unintelligible). |
| Mother: | How did you get that? |
| Keefe: | 'cause I have 200 grams of meth. |
| Mother: | I thought you kept it all in a safe. |
| Keefe: | I did but it wasn't fu[**]ing locked. Oh, God. |

Keefe asserted that her comment, "I have 200 grams of meth," was referring to the criminal charges, not an admission to possessing that quantity of methamphetamine. To corroborate this assertion, Keefe sought to admit Exhibit 200 (the minute entry from her initial appearance) to show that, prior to the jail call, she had been advised of the trafficking charges. Exhibit 200 contained boxes checked showing that Keefe was present, she was in custody, she was advised of charges and rights, a public defender was appointed, there was a pre-trial release order, and bond was set at $75,000. Pursuant to I.R.E. 403, the State objected to the admission of Exhibit 200, arguing concerns about unfair prejudice because the exhibit indicated that the public defender was appointed to represent Keefe, which could engender sympathy for her from the jury. Keefe subsequently offered to redact the portion referencing the public defender. Before denying admission of Exhibit 200, the district court responded, "I think there's that, there's bail, and here. There's that over here and five spots. . . . You've already lost." The district court did not further consider whether additional redactions could have cured the prejudice claimed by the State.

On appeal, the State contends that Keefe only preserved the limited issue of redacting the public defender reference, such that any broader argument regarding additional redactions is not preserved. We disagree. Once the district court made a definitive ruling on the State's I.R.E. 403 objection and denied admission of Exhibit 200, Keefe was not required to renew her offer of redaction to preserve the issue for appellate review. *See* I.R.E. 103(b). Because the district court directly addressed the State's objection and ruled on the record, the issue is properly preserved for appellate consideration.

Turning to the merits of whether the district court erred in declining Keefe's request to admit Exhibit 200, the relevant question is whether the district court reasonably accepted the State's concern that the exhibit could create unfair prejudice. At trial, the State argued that the exhibit revealed that Keefe was in custody, that she had been appointed a public defender, and that these references could improperly influence the jury. The district court accepted the State's concern that the exhibit could create unfair prejudice because it revealed that Keefe was in custody and had been appointed a public defender. Keefe argues on appeal that the jury would not have

suspected she was in custody or represented by the public defender because she "was not in jail garb during the trial."

Keefe next argues the prejudice "did not substantially outweigh the probative value" of the exhibit because "the jail call was the single strongest piece of evidence" that she "knowingly possessed the methamphetamine and was aware of the weight." The exhibit showed that a public defender had been appointed and should be contacted, that Keefe was in custody, and that she would be released on $75,000 bond and a pretrial release order. Because the exhibit revealed that Keefe was in custody and had been appointed a public defender, the district court excluded the exhibit.

Finally, Keefe argues the prejudice could have been cured by redaction. After initially resisting redaction, Keefe offered to redact "the portion that indicates 'PD appointed, contact with the public defender's office.'" Keefe did not propose redacting the remaining portions indicating that she was in custody and subject to bond and pretrial release conditions. Because those references remained, the district court excluded the exhibit even with the proposed redaction.

We need not determine if the district erred in excluding Exhibit 200 because, even if the district court erred, the error was harmless. Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Thus, we examine whether the alleged error complained of in the present case was harmless. *See id.* Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. *Garcia*, 166 at 674, 462 P.3d at 1138. This standard requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *Id.* If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened,

which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

Exhibit 200 did not bear directly on any statutory element of trafficking, such as possession, knowledge, or quantity. *See* I.C. § 37-2732B(a)(4)(A). Instead, the exhibit was offered to rebut the inference of guilt drawn from Keefe's statements during the jail call. While this offered purpose made the exhibit marginally probative of her state of mind, the exhibit's exclusion did not meaningfully affect the outcome of her case considering the overwhelming independent evidence, which included: the officers discovered more than 140 grams of methamphetamine in a safe located in the rear cargo area of Keefe's vehicle, along with drug paraphernalia in the area where she was found when contacted by law enforcement; and the vehicle was registered in Keefe's name.

The jury also heard testimony that Keefe and the male driver were living in the vehicle, which, while offering an alternative explanation for shared access to the contraband, nonetheless reinforced that she exercised control over the space where the drugs and paraphernalia were found. The jury also heard testimony that the quantity of methamphetamine exceeded amounts typical for personal use. Considering this combination of physical and contextual evidence, the inclusion of Exhibit 200 would not have affected the jury's verdict. Thus, even if the district court erred by declining to consider whether broader redaction of the exhibit could have mitigated prejudice, such error was harmless.

### 2. Admission of testimony

Keefe argues the district court erred by overruling her objection to testimony suggesting that the quantity of methamphetamine seized exceeded amounts typical for personal use. She asserts that this testimony was irrelevant and unfairly prejudicial. At trial, the State called Officer Louwsma, a narcotics detection expert, as a witness. Officer Louwsma testified that the quantity of methamphetamine recovered in this case was greater than typical quantities possessed for personal use.

Testimony that the quantity of methamphetamine exceeded amounts typical for personal use was relevant to prove that both Keefe and the male driver possessed the substance and to negate any inference that only the male driver, who admitted to recent use, was in possession. Moreover, any potential prejudice was minimal. Evidence is not unfairly prejudicial simply because it is

damaging to a defendant's case; rather, evidence is unfairly prejudicial when it suggests decision on an improper basis. *State v. Floyd*, 125 Idaho 651, 654, 873 P.2d 905, 908 (Ct. App. 1994); *see* I.R.E. 403. Here, the testimony regarding the quantity of methamphetamine seized did not invite an emotional response or encourage the jury to decide the case on an improper basis. Instead, the testimony directly related to whether the quantity of methamphetamine exceeded amounts typical for personal use--an element inherent in the charged trafficking offense. Accordingly, the district court did not err in admitting the testimony.

## C. Jury Deliberation

Keefe argues that the district court erred by permitting the jury to deliberate after 5:00 p.m. without first obtaining the consent of the jurors or confirming the presence of unique circumstances as required by Idaho Court Administrative Rule 66(b). The State responds that Keefe's claim is raised for the first time on appeal and was not preserved below. We agree with the State. The record is devoid of any mention of I.C.A.R. 66(b) and Keefe failed to raise any claim that the consent of the jury was lacking. Because Keefe did not raise any issue under I.C.A.R. 66(b) and did not take the position that the jury's consent should be obtained prior to commencing deliberations at the trial level, her claim of error under I.C.A.R. 66(b) is unpreserved. Keefe does not argue fundamental error in her opening brief, and we therefore need not review the claim on that basis. Even if we were to consider the issue, Keefe would not prevail.

When a defendant alleges that a constitutional error occurred at trial and the alleged error was not followed by a contemporaneous objection, the claim of error must be reviewed under the fundamental error doctrine. *State v. Miller*, 165 Idaho 115, 119, 443 P.3d 129, 133 (2019). In order to obtain relief under the fundamental error doctrine, the defendant must demonstrate three things. First, the defendant must show that one or more of the defendant's unwaived constitutional rights were violated. *Id.* Second, the error must be clear and obvious, meaning the record must demonstrate evidence of the error and evidence as to whether or not trial counsel made a tactical decision in failing to object. *Id*. Third, the defendant must demonstrate that the error affected the defendant's substantial rights, which means the error identified in the first and second prongs of the test actually affected the outcome of the trial. *Id.* at 119-20, 443 P.3d at 133-34. Keefe has failed to satisfy any of these requirements. Keefe has not demonstrated that the alleged violation of I.C.A.R. 66(b) implicates a constitutional right. Idaho Court Administrative Rule 66(b) is an

administrative rule governing jury procedure and does not create or protect a constitutional right belonging to a criminal defendant. Nothing in the rule suggests that a defendant has a constitutional right to require express jury consent before deliberations can occur outside regular business hours. Rather, the rule is directed toward the administration of jury service and the jurors' participation in late-hour deliberations. Because Keefe did not raise fundamental error in her opening brief and has not demonstrated a violation of an unwaived constitutional right, the claim fails under the fundamental error doctrine.

**D.     Cumulative Error Doctrine**

Keefe also contends that the cumulative error doctrine applies here, necessitating a reversal of her conviction. Under the doctrine of cumulative error, a series of errors (harmless in and of themselves) may in the aggregate show the absence of a fair trial. *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012). However, a necessary predicate to the application of the doctrine is a finding of more than one error. *Id*. Keefe has failed to demonstrate at least two errors, a necessary predicate to the application of the cumulative error doctrine.

**IV.**

**CONCLUSION**

Keefe has failed to meet her burden that the district court erred in denying her motion to suppress, overruling her objection to admission of testimony, or permitting the jury to deliberate after 5:00 p.m. Even if the district court erred in excluding Exhibit 200, any error was harmless. Because Keefe has failed to show more than one error, she is not entitled to relief based on the cumulative error doctrine. Accordingly, Keefe's judgment of conviction for trafficking in methamphetamine and possession of drug paraphernalia is affirmed.

Judge GRATTON and Judge LORELLO, **CONCUR**.